HELSER & McGRATH v. POTT & SHREINER.

Where A. sold lands to B., but retained the title as security for the unpaid purchase money, and B., the vendee, leased the property, consisting of a forge, furnace, and saw-mills, to C., for five years, at the annual rent of $800, payable in bar-iron of good merchantable quality, drawn to order, at $5 per hundred pounds at the works; no iron to be drawn less than half an inch by one inch and a half. B., being indebted, assigned all his property, in trust for creditors; and C., the tenant, becoming insolvent, his stock was sold by the sheriff to D., who sold the same to E. & F., who took possession of the leased premises, and agreed to work up the stock bought of D., to the best advantage; and that, after all the liabilities and expenses for working up and purchasing the same were paid, they would pay the balance to A., on the note of B. & C. On this lease, was the following endorsement, signed by E. & F.: "We, the undersigned, promise to comply with the within article, so long as we carry on the iron-works, by being released of the rents at any time we see proper to give up the iron-works; which rent we agree to pay to A., by B.'s order, and which works we will give up on the first day of April, 1844." *Held*, that this agreement did not create the relation of landlord and tenant between A. and E. & F., and that A. could not distrain for the rent in arrear. *Held*, also, that this agreement was not an assignment of the lease, but merely an appropriation of the rent to the use of A., for the non-payment of which he could not distrain.

In such case, if A. had been the landlord, he had no right to distrain, unless the tenants had failed to comply with their contract, by refusing to deliver iron on orders drawn by B., specifying the size.

Taking a distress is a legal demand where the rent is reserved in money, and in many cases where it is payable in kind; but not in this case, where the tenants could not know when, how much iron, or of what size, to tender.

B. was a competent witness for A. If he had an interest, it was adverse to the party calling him; as his testimony gave the rent to A., which otherwise would have belonged to himself.

A paper, which is part of a transaction, and explanatory of it, is admissible in evidence.

ERROR to Common Pleas of Franklin county.

*June* 11. This was an action of replevin, brought by Helser & McGrath, the plaintiffs in error, against Pott & Shreiner. Pott avowed for rent in arrear, and Shreiner, the other defendant, who was a constable, made cognisance, &c. The plaintiffs replied, no rent in arrear, *non tenuit*, and that Pott had no estate in the premises. The facts of the case, as stated in the opinion of this court, delivered by his honour, Judge Rogers, are these:—

William Pott was the owner of the Warren iron-works, in the county of Franklin, which, by articles of agreement, dated the 1st of April, 1836, he sold to William Bowers. For certain considerations therein mentioned, Pott agreed to convey the tract of land, with the appurtenances, to Bowers, retaining, as the security for the unpaid purchase money, the title in his own possession for a time not to

exceed fifteen years.   Bowers took possession of the property, paid part of the purchase money, and Pott retained the title, according to the contract.   On the 1st of April, 1841, Bowers leased the property, consisting of a forge, furnace, and saw-mills, with the appurtenances, to Benjamin Fisher, for five years ; in consideration whereof, Fisher bound himself to pay to Bowers the sum of $800, yearly and every year during the continuance of the term, payable in bar-iron of good merchantable quality, drawn to order, at $5 for one hundred pounds at the works; no iron to be drawn less than one half inch by an inch and a half, &c.   On the 21st of January, 1842, Bowers being largely indebted, assigned his property for the benefit of his creditors, to the plaintiffs, Helser & McGrath.   After providing for creditors of the first class, the deed of assignment proceeds thus : "For the second class, all the other creditors of the said William Bowers to be equally paid, as far as the said effects herein assigned will pay and satisfy, except William Pott, Esq., who is a large creditor of the said William Bowers, holding the title for the unpaid purchase money of the furnace and forge tract in said township of Warren, containing three hundred acres or thereabouts, and about sixteen hundred acres of mountain land, situate in said township ; and the said William Pott having a lien on the same for the balance of the purchase money, amounting to the sum of $12,000, or thereabouts, to which, said property and the proceeds thereof are appropriated, and which said William Pott, as a creditor, is postponed to the creditors of the second class, under this trust."   It further appeared, that Benjamin Fisher, the tenant, being insolvent, on the 5th day of May, 1842, his stock, consisting of iron ore, coal, &c., was sold by the sheriff to James Dickey, who sold the same to the plaintiffs.   Helser & McGrath took possession of the premises, and agreed, that they would work up to the best advantage the stock bought of Dickey, and that, after all the liabilities and expenses for working and purchasing the stock were paid, they would pay the balance to William Pott, on the note of Bowers & Fisher.   On the lease from Bowers to Fisher was the following endorsement :—

" We, the undersigned, promise to comply with the within article, so long as we carry on the iron-works, by being released, as to the rents, at any time we see proper to give up the iron-works, which rent we agree to pay to William Pott, by Mr. Bowers' order, and which works we will give up on the first day of April, 1844.

(Signed,)

SOLOMON HELSER,
WILLIAM MCGRATH.

" May 12th, 1842."

On the trial, the defendants offered in evidence the article of agreement, dated the 1st of April, 1836, between William Pott and William Bowers; also the deed of assignment, dated 21st of January, 1842, from William Bowers to Solomon Helser and William McGrath; and also the lease, dated 1st of April, 1844, from William Bowers to Benjamin Fisher, together with the agreement endorsed thereon, signed by Solomon Helser and William McGrath, dated the 12th of May, 1842. To reading the said lease and agreement thereon to the jury, the counsel of the plaintiffs objected. The court overruled the objection, admitted the same in evidence, and sealed a bill of exceptions, which constituted plaintiff's first bill. They then called William Bowers as a witness. The counsel of the plaintiffs objected to his competency; whereupon he was sworn upon his *voire dire*, and said, "I have not any claim to the land. I have no claim or title to the land, further than that article of agreement. I have paid on the article the amount credited. I have given up the land to Pott. I have built a barn on it this summer for Mr. Pott. Mr. Pott holds me liable for rent, and the building of the barn is to be taken out of the rent. I have no written agreement with Pott on the subject." The counsel of the plaintiffs continued their objection to the witness, when he executed a release at bar, dated the 31st of October, 1845, which was read to the court; whereupon, the court overruled the objection to the witness, and directed him to be sworn in chief. This decision of the court constituted the plaintiff's second bill of exception.

On the part of the plaintiffs, *inter alia*, a paper, dated the 13th of May, 1842, and marked (A), was offered in evidence, of which the following is a copy:—

"I do hereby agree and bind myself, that I will not in any way hold Solomon Helser and William McGrath, (assignees of William Bowers,) for rent or rents due, or becoming due (on the lease now in possession of Benjamin Fisher) after the stock is worked up, which said Helser & McGrath purchased from James Dickey; provided, they give me the privilege of renting them to such person or persons as I may think proper. Witness my hand and seal, this 13th day of May, 1842.

(Signed,)          WILLIAM BOWERS."

The counsel of the defendant objected to the evidence offered, and the court sustained the objection. The rejection of this evidence constituted the plaintiff's third bill of exception.

The plaintiffs renewed the offer of this paper, after they had

Q

proved by William Bowers, that it was in his handwriting, and the court again rejected it; which formed their fourth bill of exception.

The court (BLACK, President) charged the jury, in substance as follows:—

"If you believe the evidence before you, William Bowers was entitled to distrain for the rent claimed, and your verdict ought to be in favour of the defendants, finding the amount of rent in arrear, and also the value of the goods distrained."

To which charge of the court the plaintiffs excepted, and the court sealed a bill of exception. The jury found for the defendants; whereupon the plaintiffs took this writ of error.

Errors assigned.

"1. The court erred in admitting in evidence the lease from Bowers to Fisher, and the agreement thereon, mentioned in the first bill of exceptions.

"2. The court erred in admitting Bowers as a witness, as mentioned in the second bill of exceptions.

"3. The court erred in rejecting the paper signed by Bowers, dated 13th May, 1842, marked A, mentioned in third bill of exceptions.

"4. The court erred in rejecting the paper signed by Bowers, dated 13th May, 1842, marked A, mentioned in the fourth bill of exceptions.

"5. The court erred in charging the jury, that W. Pott was entitled to distrain for the rent claimed, and that the verdict ought to be for the defendants, finding the amount of the rent in arrear, and the value of the goods distrained;

"Whereas, the charge ought to have been, that, as there was no demise, and no proof of a demand of the alleged rent in iron, according to a bill or order drawn, the defendant, William Pott, had no right to distrain, and the verdict ought to be for the plaintiffs."

*Smith* and *Thompson*, for plaintiffs in error, contended, that Pott was not the landlord of Helser & McGrath. The deed of assignment made by Bowers did not alter the relations between Pott and Bowers. It was not and did not purport to be a re-conveyance of Bowers' equitable interest to Pott. It only recited the facts. Pott had a lien for the balance due on the articles of agreement. The legal title was in him. Pott was no party to the assignment. If the assignment had any effect, it was only to appropriate the lands and

the proceeds to the payment of the balance due to Pott. Bowers still had a large equitable interest on which the assignment did not operate.

The endorsement on the lease, signed by Helser & McGrath, did not make them the tenants of Pott. The latter was not a party; entered into no obligations as lessor; did not own the reversion. Helser & McGrath engaged to comply with the terms of the lease. They stepped into Fisher's shoes. Bowers was still the landlord, and Helser & McGrath were his under tenants.

The rent was payable in bar-iron, to be drawn to order. The tenants could not know the kind of iron wanted until it was particularly designated. 6 Bac. Abr., title *Rent;* 13 East's Rep. 18; 7 Com. Law Rep. 115; 20 Com. Law Rep. 194; 6 Law Lib. 3; Ibid. 71.

Bowers had the control of the rent. Easton proved, that Pott acquiesced in the act of Bowers releasing Helser & McGrath from the rent; at least there was evidence of acquiescence, which should have gone to the jury.

Bowers should not have been admitted as a witness. He was the real owner of the rent, notwithstanding the release in court. Whatever rent was recovered, would be credited to his advantage on the articles between him and Pott.

*Bard*, for defendants in error.—Whatever words are sufficient to explain the intention of the parties, that the one should divest himself of the property and the other come into it for a determinate time, amounts to a lease. 6 Watts, 368; Bacon's Abr. tit. *Lease*, K; Woodfall's Landlord and Tenant, 118, 119, 121. Bowers, by his deed of assignment to the plaintiffs, had in effect surrendered his equitable title in the premises to Pott. Such at least was his intention. The agreement between Bowers and Fisher, beyond all doubt, amounts to a lease. What is the writing on the back of it, signed by the plaintiffs, but an agreement by them to pay to Pott the same rent that Fisher was to pay to Bowers? In short, it was but an adoption of the terms of the old lease by the plaintiffs on the one side, and by Pott on the other. The contract was not only to pay the rent *to* Pott, but it was a contract made *with* him. Pott took the agreement and kept it; and Bowers, so far from being a party, signed his name as a witness to the other agreement, that was executed at the same time, and precisely in the same manner, and which must be construed to be a part of one and the same contract.

The point as to the avowant not having demanded the rent, nor furnished a bill for the particular kind of iron, is not raised by the pleadings. The general avowry must be supposed to be drawn in form, according to the facts proved in the case. Ewing *v.* Vanarsdall, 1 Serg. & Rawle, 372. And the existence of every fact alleged in the avowry, and not specially traversed by the pleading, is admitted. Hill *v.* Miller, 5 Serg. & Rawle, 357. The issue that comes nearest raising the question, when drawn up in form, admits the tenancy in the manner, *and on the terms alleged*, and only denies that there is any *rent in arrear*. 5 Serg. & Rawle, 357 ; Albright *v.* Pickle, 4 Yeates, 265 ; Weidel *v.* Rosenbery, 13 Serg. & Rawle, 181 ; Williams *v.* Smith, 10 Serg. & Rawle, 205. Here all the rent *was* in arrear, and is still in arrear, whether demanded or not.

But it is not necessary before distraining to make a demand of the rent. Royer *v.* Ake, 3 Penn. Rep. 465 ; Bacon's Abr. tit. *Rent*, I. The tenant can relieve himself by tendering the rent (Ibid.) ; or offering on the premises, after distress made, to comply with the terms of his lease. Ibid. ; 2 Rawle, 13.

*June* 16. ROGERS, J., after stating the facts, and that Pott was the legal, and Bowers the equitable owner of the estate, proceeded as follows :

The case principally turns on the construction of this agreement. It raises one question to which the others are more or less subordinate, viz., whether William Pott has a right to distrain for rent on the lease from Bowers to Fisher. And this depends on two considerations : 1st, Did the relation of landlord and tenant exist between William Pott and Solomon Helser and William McGrath ? and 2d, Was such a demand made of the rent as to enable him to distrain ? On both points we think the defendants have failed in their defence.

We see nothing in the agreement, or the attending circumstances, which constitute the relation of landlord and tenant between the parties, so as to give Pott a right to use the summary process of distress. The plaintiffs, in answer to the avowry, plead *non demisit*, and *non tenuit ;* which denies the demise or tenure, as set forth in the avowry, and throws the issue upon the defendants, who must prove a demise. In order to support his pleas, he must show a lease ; for an agreement for a lease is in many cases insufficient. 6 Law Lib. 317, Comyn's Landlord and Tenant, and the authorities there cited. It is indispensable, under the pleadings for the defendants, to prove that Pott stands in the situation of a lessor.

The case is free from difficulty, as to the-existence of a lease ; for the lease between Bower and Fisher is a good and binding contract, drawn in all due and proper form. Nor can it be doubted, that the plaintiffs, as to the payment of the rents during the occupation of the demised premises, occupy the same position as the original lessee. The only doubt is, whether Pott is the assignee of the lease ; and this depends on the intention of the parties to the contract of the 12th of May, to be gathered from the agreement endorsed on the lease, and signed by the plaintiff. Does it amount to an assign-ment; or is it merely an appropriation of the rent, to the use of Pott ? In our judgment, the latter is the fair import of the contract ; for we cannot consider this more than an appropriation of the rent to be paid to Pott, in iron, according to the order of Bowers. We see no indication of an intention that Bowers should cease to be lessor, or that Pott should have control of the rents, so as to enable him to distrain for its non-payment. Had an assignment of the lease been in contemplation of the parties, it seems strange it should be drawn in its present form. It is an instrument so simple, that few persons are so ignorant as not to know how to clothe it in apt and proper terms. It is difficult to understand what is meant by the expressions, "paying the rent to Pott by Bowers's order," if Bowers was to cease to be lessor, and Pott to become the lessor. The suggestion, that Bowers was to be agent of Pott, is not a satisfactory explanation. The order to the plaintiffs is to come from Bowers, not as agent, but as principal. He, as the agreement runs, is to have control as to the time and manner of drawing the order, and as to the size of the iron. Such, we think, is the only fair construction of the con-tract. It is said, that the agreement, although dated the 12th of May, was not executed until the 20th of July ; that it was signed in Pott's office, and that Pott took possession of it. Be it so ; but in this we see nothing to vary the construction of the agreement, or to indicate an intention to assign the lease. Pott had an interest in the payment of the rent, which may well account for his possession. The contract was drawn by Helser, one of the lessees ; and it may well have assumed its present form, to exclude the conclusion that it was an assignment ; for it was of some importance to the plain-tiffs that Bowers should remain lessor, as in that case he had the benefit of a set-off, of which he is deprived by the substitution of Pott. Nor do I perceive that any inference unfavourable to this construction, properly arises from the assignment of the 21st of Janu-ary, 1842. The clause in relation to Pott, seems to have been designed for the sole purpose of giving a reason for his exclusion from the second.

class of creditors, by stating what we cannot doubt, that although
he was a large creditor, yet he held his indemnity in his own hands;
having retained the legal title as a security for the purchase money.

But, granting he was landlord, had he a right to distrain, without
proof that the plaintiff failed to perform the contract, refusing to
deliver iron on an order from Bowers, specifying the size of the iron?
It will be remembered, that the rent is payable in bar-iron of good
merchantable quality, to be drawn not less than one-half inch, nor
more than one inch and a half. This is, be it observed, a very
essential and important stipulation; for it is doubtless the interest of
iron-masters to pay in their own commodity, rather than cash; and
*non constat*, had an order been presented and demand made, but
that the order would have been complied with in good faith. Of
this benefit he cannot be deprived; and if the lessor is in default in
this essential particular, what right had he to take the remedy in his
own hands by distress? There is a material difference when the
remedy is by re-entry, and when it is by distress. In the former
case, there must be an actual demand previous to entry. In the
latter, generally, no demand is necessary previous to the distress.
But to the general rule there are exceptions. Thus, when the rent
is payable at a place off the land, with a clause, if the rent be behind,
being lawfully demanded at the place off the land; or with a clause,
that if the rent be behind, being lawfully demanded of the person
that is to pay it, that then he may distrain; in these cases, though
the remedy be by distress only, yet the grantor cannot distrain with-
out a previous demand; because here the distress and demand
being not one complete, but different acts, to be performed at dif-
ferent places and times, the demand must be previous to the distress;
*for the distress is a matter of agreement between the parties, not of
common right, and therefore must be used in the same manner it was
given.* 6 Bacon's Abr. 26, 28, and the authorities there cited.
There is no mistaking the intention of the parties to this contract;
for it is very certain, that it was not designed by them that the les-
sor should distrain until the tenant made default, by a refusal to
furnish the iron, after a specific and actual demand. A contrary
construction would lead to injustice; because it would enable the
landlord to exact cash in payment, instead of that article in which it
is agreed the rent may be paid, putting the tenant in a more unfa-
vourable position than is called for in the agreement. It is con-
tended that the very taking the distress is a legal demand; and that
the tenant is not injured by the distress, because upon the tender of
the rent, the pledges are immediately to be returned, as a writ of

detinue lies after the question of rent has been settled in replevin. 6 Bacon's Abr. 26. And this is true of a rent reserved in money, or in many cases in kind; but can this principle apply here? for how can the tenant know when, how much iron, or of what size to tender? By the contract, within certain restrictions, the lessor himself is the sole judge of those particulars. The distress, as has been before shown, is a matter of agreement, and not of common right; and must be construed by the intention of the parties, *cessante ratione cessat ipse lex.* The rationale of this contract is, that the tenant must have reasonable notice, that he may be able to comply with the contract.

We see no error in admitting William Bowers to testify. If he has an interest, which we cannot perceive, it is adverse to the party calling him. His testimony gives the rent to Pott, which otherwise belongs to himself.

It seems to me that the paper marked A, should have been admitted as part of and explanatory of the transaction, particularly if, as has been testified by Bowers, the defendant's witness, the contract was made on the 20th of July, instead of the 12th of May, the day it purports to bear date. What effect it may have, need not be determined. And indeed it will be of little consequence; for unless a different case is made, or another trial, there is nothing in the way of the plaintiff's recovery.

Judgment reversed, and a *venire facias de novo* awarded.