## In re Short's Estate.

The third section of the act of 11th March 1850, relating to collateral inheritance taxes, which provides that the words "*being within this commonwealth,*" in the first section of the act of 7th April 1826, relating to collateral inheritances, "shall be so construed as to relate to all persons who have been at the time of their decease, or now may be, domiciled within this commonwealth, as well as to estates," is applicable to the estate of a person domiciled in Pennsylvania, who died *before the passage of the act,* viz. in December 1849, and is, as to such a case, constitutional, at least as to assets remaining in this State in the hands of the executors; and therefore stocks in corporations in other States, and bonds of such corporations, and cash in a bank in another State, belonging to such a decedent, are liable to the collateral inheritance tax for the use of this commonwealth, and the executors are chargeable with the amount of the said tax, out of the assets in their hands.

APPEAL from the decree of the Register's Court for the city and county of *Philadelphia.*

William Short, the deceased, was, at the time of his death, on 5th December 1849, domiciled in Philadelphia, where he died. He owned no real estate in Pennsylvania, but he owned a large personal estate. His personal estate *in Pennsylvania,* exceeding $70,000, was more than sufficient to pay the specific legacies in his will; but he owned a large amount invested in stock and corporations in other States, some bonds of the State of Kentucky, &c., in all exceeding half a million of dollars, and above $1000 of cash in a bank in New York. The register of wills for the city and county of Philadelphia decided that the collateral inheritance tax was to be charged and paid on the whole property left by the testator, as well on that which was not within the State of Pennsylvania, at the time of his death, as on that which was therein; amounting at its appraised value to $601,586.49; and making the

said tax, after allowance for commissions, expenses, and expected demands, $26,995.,

From this decree an appeal was taken to the Register's Court for the city and county of Philadelphia, where it was affirmed. An appeal was entered by Samuel H. Carpenter, one of the executors of the will of deceased, to the Supreme Court.

The deceased was unmarried. On 11th September 1847 he made his will at Philadelphia. In this he bequeathed certain legacies, amounting in the aggregate to $25,000, to individuals, all of whom were citizens and residents of the State of Pennsylvania. He then devised the entire residue of the property which he might own at the time of his death to his two nephews, John Cleves Short, who was then a citizen and had been for many years a resident of the State of Ohio, and Charles Wilkins Short, who was then a citizen and had been for many years a resident of Kentucky; the income thereof to be received and enjoyed by them jointly, during their joint lives. On the death of either of them, the whole of the property was to be taken and enjoyed by the survivor, his heirs, executors, administrators, and assigns. He appointed these nephews, and Samuel H. Carpenter of Philadelphia, the executors of his will. Carpenter alone received letters testamentary.

It is provided in the first section of the act of 7th April 1826, entitled an " Act relating to collateral inheritances," " that from and after the first day of May next, all estates, real, personal, and mixed, of every kind whatsoever, passing from any person who may die seized or possessed of such estate, *being within this commonwealth,* either by will or under the intestate laws thereof, or any part of such estate or estates, or interest therein, transferred by deed, grant, bargain, or sale, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor, to any person or persons, or to bodies politic or corporate, in trust or otherwise, other than to or for the use of *father, mother, husband, wife, children, and lineal descendants born in lawful wedlock,* shall be and they are hereby made subject to a tax or duty of two dollars and fifty cents on every hundred dollars of the clear value of such estate or estates, and at and after the same rate for any less amount, to be paid to the use of the commonwealth," &c.

No estate which may be valued at less than $250 shall be subject to the duty or tax.

It was decided in 1847, in the case of the Commonwealth *v.* Smith, reported in 5 *Barr* 142, that it was not the *person,* but *the estate within this commonwealth,* on which the tax aforesaid was to be levied.

It was however enacted by the third section of an act passed on the 11th March 1850, (Acts of 1850, p. 170,) that " the words

[In re Short's Estate.]

' *being within this Commonwealth*,' in the first section of, an act passed on the 7th of April 1826, entitled ' An act relative to collateral inheritances,' shall be so construed as to relate to all *persons* who have been, *at the time of their decease*, or now may be, domiciled within this commonwealth, as well as to estates; and this is declared to be the true intent and meaning of said act."

. The case was argued, on the part of the appellant, by *H. D. Gilpin*.—It was contended that the decree of the register's court, now appealed from, ought to be reversed, because,

1. The law of Pennsylvania, as it existed at the time of the testator's death, when the estate liable to taxation passed from him to his collateral relatives, expressly limited the tax to property then within this commonwealth.

2. The act of Assembly passed on the 11th March 1850, and since the death of the testator, which has varied this law, does not, by its terms, apply to the case of a person who had died *before its enactment*.

3. If the language of that act were capable of such a construction, it will not be sanctioned by judicial tribunals, because it would make the law retrospective and destructive of vested interests.

4. If a construction of the language of that act could apply it retrospectively to the case of a *person* who had died before its enactment, still it has relation only to such of his *property* as was actually within this commonwealth when he died.

Reference was made to the case of Alexander's Estate, 4 *Pa. Law Journ.* 448; Commonwealth *v.* Smith, 5 *Barr* 142; Commonwealth *v.* Duffield, 2 *Am. Law Jour.* 86.

In relation to the second point or exception, that the act of March 1850 did not apply in its terms to a person who died, and whose estate had become vested in collateral relatives *before* its enactment; that it had not necessarily such a meaning; that its language appeared to be *prospective*—to relate to cases occurring *after its enactment;* that a construction which would give an operation to an act which would interfere with rights already accrued should not be adopted, unless its language was incapable of a different construction: 4 *Ser. & R.* 401; 7 *Johns.* 501; 5 *W. & Ser.* 199; 2 *Barr* 25.

But such a construction would violate those clauses of the constitution of Pennsylvania, which declare that "no one shall be deprived of his property unless by the judgment of his peers or the law of the land," and that "no law impairing contracts shall be made," and that clause of the constitution of the United States which declares that "no State shall pass any law impairing the obligation of contracts." That the transfer of property by will is subject to the laws and governed by the principles which are ap-

[In re Short's Estate.]

plicable to transfers effected by the acts of the parties. The judicial principles which would control and regulate this property, in case Mr. Short had sold it at the date of his will, must control it, though he devised it: 2 *Black. Com.* 294, 378; 4 *Ser. & R.* 364; 3 *Rawle* 132; 2 *Whar.* 396; 3 *id.* 15; 5 *W. & Ser.* 173; 8 *id.* 50; 5 *Barr* 149; 1 *Jones* 494; 2 *Cranch* 277; 7 *id.* 166; 4 *Whar.* 122; 12 *id.* 213; 1 *Howard* 311.

In this case, if the construction be that the property out of the State is taxable, it will require the appropriation of only about the one-half or two-thirds of the property left within the State and in the hands of the executor to discharge it on property out of the State, and paying to the legatees out of the State; but cases may occur where all the assets in Pennsylvania may be required to pay the tax on property abroad passing to legatees who are abroad.

*Scott* and *Hood*, contra.

The opinion of the court was delivered by

GIBSON, C. J.—That Mr. Short's property out of the State subjected him to personal liability for taxes assessed on it here in his lifetime, is not to be doubted. The general rule is that the *situs* of personal property follows the domicile of the owner of it, insomuch that even a creditor cannot reach it in a foreign country except by attachment or some other process provided by the local law; certainly not by a personal action without an appearance or something equivalent to it. But personal property may, for particular purposes, have an actual *situs* distinct from its legal one. At the death of the owner, however, he ceases to have a domicile, and all the incidents of it are at an end, except the title to the succession. For all besides, the title to the assets abroad devolves on a local administrator, whose business it becomes to collect them, sell them, and having satisfied the demand against them by creditors or the State, to remit the surplus of the proceeds to the executor or administrator at the place of the domicile, for distribution among the unpaid creditors and the next of kin. All this was shown on principle and authority, in Mothland v. Wireman, 3 *Pa. Rep.* 185, and in the case of Miller's Estate, 3 *Rawle* 312. The legislature acted on the principle of those cases in the act of 1826, by subjecting nothing to the collateral inheritance tax but property actually within the bounds of the States described as "passing from any person who may die seized or possessed of such estate, *being within this commonwealth.*" The position taken for the next of kin, in Smith v. The Commonwealth, was that the concluding words related to the person of the owner, and not to the property. But they are naturally referable to the subject of which the legislature was speaking, which was the thing to be taxed, and not to the person of the owner of it, which was beyond the legislative power. Any other interpreta-

[In re Short's Estate.]

tion would have tied up the hands of the State as to property within its grasp. Had we required both person and property to be here at the death, the right of the State would have been still further restricted; yet if the words are applicable to the person, they are at least as much applicable to the property. Indeed it is impossible to conceive how a tax could be assessed on the person of a dead man; and, as was held in Smith *v.* The Commonwealth, it must consequently be assessed on the property here, without regard to the domicile. Did the question therefore stand on the act of 1826 exclusively, we would hold the property in question to be free from the tax. But the legislature thought proper to enlarge its operation by assigning to it a more expanded meaning. By the supplemental act of 1850, it was declared that " the words 'being within this commonwealth,' shall be so construed as to relate to all persons who *have been* at the time of their decease, or *now* may be domiciled within this commonwealth, as well as to estates: and this is declared to be the true intent and meaning of said act." More pointed words to make the act retrospective, as well as prospective, could not have been chosen; and it will scarce be said the legislature had not power to make it so, at least as to assets remaining in the hands of the executor or administrator. No clause of the constitution forbids it to extend a tax already laid, or to tax assets not taxed before; and in establishing its peculiar interpretation, it has only done indirectly what it was competent to do directly. The argument has been that we ought not to give the act a retroactive effect, unless we are forced to do so by the stringency of its words. The principle is a sound one where retroaction would work injustice, as it would have done in Bedford *v.* Shilling. (4 *Ser. & R.* 401.) But certainly no injustice is done by increasing a tax to meet an increase of the public burden. Waving this consideration, the words of the act are too peremptory to be disregarded, or to leave room for construction.

Decree of the Register's Court affirmed.