## Jeffery's Estate

6

Before Stearne, acting P. J., and Sinkler, Klein, and Ladner, JJ.

*Joseph M. Leib* and *John J. McDevitt, Jr.*, for exceptants.

*George Wharton Pepper*, of *Pepper, Bodine, Stokes & Schoch*, contra.

LADNER, J., March 25, 1938.—The questions to be decided and the relevant facts under which these arise are clearly stated in Judge Bolger's adjudication from which we take the following statement of facts.

Charles T. Jeffery by a deed of trust executed May 8, 1928, directed in the third paragraph thereof that the net income should be paid to himself for life, then to his wife, Kate R. Jeffery, for life or widowhood, with further provisions upon the happening of either event, unnecessary to recite because Kate R. Jeffery survives and has not remarried. Two other deeds creating similar trusts for decedent's daughter, Margaret C. Jeffery McGovern, and decedent's sister, Florence J. Hudson, were also before the learned auditing judge at the same time.

Charles T. Jeffery died November 10, 1935, leaving a will dated December 8, 1934, by which after directing the payment of his just debts and funeral expenses, he gave the residue of his estate in equal shares to his wife, Kate R. Jeffery, and his daughter, Margaret C. Jeffery McGovern. His testamentary estate is computed to be $198,-480.11. The Federal estate tax has been properly computed upon an aggregate sum made up of the taxable individual estate of the decedent, the three trust funds before the auditing judge for audit, a fourth revocable trust, and taxable life insurance (the last two items not being before the auditing judge except for the purpose of calculation of the aggregate estate and the amount of tax.) The total tax upon the aggregate estate is shown by the auditing judge to be $407,846.57, and the aggregate amount of his estate together with the trust estates under the deed, amount to $1,870,614.36.

The accountant in each of the trusts before the auditing judge claimed credit for the sums apportioned, as recited in the adjudication, which apportionment was approved by all the parties in interest sui juris, with the exception of Florence J. Hudson, settlor's sister, and remainderman in one of the deeds of trust, whose counsel gave qualified approval. Definite objection, however, was raised by the trustee ad litem appointed to represent the interest of unborn children in two of the trusts.

The question before the learned auditing judge was concisely stated as follows: "Should the Federal estate tax be equitably apportioned between the decedent's testamentary estate and the trust estates created by him?" This question was answered affirmatively and the exceptants charge this to be error. The learned auditing judge stated that three reasons were urged upon him in justifying the apportionment, viz:

(1) Should the tax be apportioned between the testamentary and the trust estate under the equitable doctrine of equality and contribution?

(2) Do the deeds of trust severally direct that the burden of the tax should be borne by the respective trust estates?

(3) What is the effect of the Act of July 2, 1937, P. L. 2762?

The first reason, the learned auditing judge declined to adopt, and followed Ely's Estate, 28 D. & C. 663, Uber's Estate, 29 D. & C. 341, and Snowden's Estate, O. C., Phila. County, October term, 1913, no. 412, all of which hold in substance that the Federal tax is an estate tax, not a transfer tax, and is therefore payable out of the residue of the testamentary estate unless the testator or settlor otherwise expressly directs. We are urged by the distinguished counsel for the accountant that if necessary to uphold the auditing judge's disposition of the question before him, we reëxamine these decisions and substitute for the rule there laid down the more equitable

rule apportioning the tax by requiring reimbursement to the beneficiary out of whose share the Government by accident of chance or for ease of collection may have taken the tax. In the case before us the learned auditing judge upheld the apportionment claim because of what he found to be an express direction of the settlor-testator; hence, so far as this case is concerned it becomes unnecessary to review the decisions of this court above referred to. Moreover, since the Act of 1937, supra, adding section 48.1 to the Fiduciaries Act of June 7, 1917, P. L. 447, as we interpret it herein, now definitely settles the question, it would serve no real purpose to reconsider the decisions by this court under which apportionment was heretofore denied.

We find no error in the ruling of the learned auditing judge that the direction of the settlor common to the three deeds of trust "to pay out of said trust fund all costs, charges and expenses of said trust estate and of the management thereof, including Court costs, attorneys' fees and reasonable compensation to the party of the second part for his services as trustee hereunder" may be regarded as requiring each of the trust estates to bear its respective burden of the tax. The reasoning of Judge Bolger in so concluding is so satisfactory that we cannot add anything to it with profit and therefore content ourselves with adopting as our own the following language from his adjudication:

"The guardian ad litem urges that this language is not broad enough to include the subject of taxation. He insists that the subject of taxation was such an important consideration at the time the deeds were drawn, namely in the year 1928, that the settlor must have definitely had it in mind, that if he had intended the burden of these taxes respectively by the several estates involved, he would have expressly so stated; and that the absence of such language in the deeds and in the will indicates that the burden of the tax must rest primarily on the testamentary estate.

"It is admitted that the settlor-testator had the right to direct the payment of such taxes by way of apportionment or otherwise, so long as in doing so he does not in any way jeopardize the interests of the United States Government in collecting the full amount of the tax due. However, it must clearly appear that it was his intention to do so. The burden, it seems, therefore, rests upon those who assert that the tax should be paid from a source other than that from which the law ordinarily collects it: The Farmers' Loan & Trust Co., etc., v. Winthrop, Exec., 238 N. Y. 477 (266 U. S. 633), and Snowden's Estate, supra.

"The pertinent words involved are 'costs, charges, and expenses', which the trustee under the deeds is directed to pay. What, therefore, is the nature of this tax? Is it an expense, a charge, or a cost? In construing this phraseology I turn to Newton's Estate, 74 Pa. Superior Ct. 361, where the Superior Court has stated explicitly that the Federal estate tax is a charge; in fact, it is in the nature of an exaction which the Government demands from the legal custodian of funds subject to the tax, no matter in what capacity such custodian acts. This principle is enunciated in many cases, among which are: Knowlton v. Moore, 178 U. S. 41; Young Men's Christian Association of Columbus, Ohio, et al. v. Davis et al., 264 U. S. 47; The Farmers' Loan & Trust Co., etc., v. Winthrop, Exec., supra, and Gaede, Exec., v. Carroll et al., 114 N. J. Eq. 524. Therefore, the trustee in paying these taxes, liquidated a charge against the funds in his possession, in accordance with the direction of the settlor.

"In Brown's Estate, 208 Pa. 161 (1904), the language 'any and all necessary expenses' was held by our Supreme Court to include the payment of taxes charged upon legacies. In that case testator gave his residuary estate to trustees to collect the income 'and after taking any and all necessary expenses, to divide the said net income in equal shares among' certain named persons. The question was whether the testator intended the Pennsylvania

and New York transfer taxes and the United States War Tax to be paid out of gross income before equal distribution to the beneficiaries or out of the principal of the estate. The court below held that the testator intended these taxes to be deducted from the gross income of the trust and then the remaining net income to be distributed equally to the beneficiaries. Mr. Justice Mestrezat, speaking for the court in affirming the action of this court, said (p. 163) :

" 'It is properly conceded by the learned counsel for the appellant that the authorities sustain the proposition that the direction in the testator's will to deduct "any and all necessary expenses" is sufficient to include the payment of the taxes charged upon the legacies.'

"To hold otherwise would be to defeat the munificent scheme of the testator as expressed both in his trust deeds and in his will. That he desired the trust estates to retain their character as separate entities is shown by the third paragraph of his will, wherein he provides as follows:

" 'I have made and created certain trusts, inter-vivos in character, some being revocable and some being irrevocable and I expressly declare that said trusts and all of them are hereby in all respects ratified and confirmed and shall continue operative according to their tenor and effect and all funds and property included in and held under said trusts and each of them and all rights of the beneficiaries thereunder shall be and remain subject to the terms and provisions of said trusts and shall form no part of my testamentary estate and shall not be affected in any way by this my Last Will and Testament.' "

The learned auditing judge having thus reached a conclusion that the language of the respective deeds of trust authorized apportionment, did not consider or discuss the effect of the recent Act of July 2, 1937, P. L. 2762, which now authorizes the apportionment of estate taxes unless the testator or settlor directs otherwise. The question of the applicability of this act to pending cases was fully argued before us and by reason of the importance of the

question, and because several cases now pending in this court raise the same question, we have determined now to decide whether that act applies to cases in which the decedent died before and no final decree of distribution was entered before its effective date.

In this case, on July 2, 1937, the accounts in the trust estates had been filed and audit had, but the adjudication not yet handed down. Does the Act of 1937, supra, apply? The act reads:

"Section 48.1.(*a*) Whenever it appears upon *any accounting or in any appropriate action or proceeding* that an executor . . . or other person acting in a fiduciary capacity, *has paid an estate tax*, levied or assessed under the provisions of the act, approved the seventh day of May, one thousand nine hundred and twenty-seven . . . or under any law hereafter enacted, or under the provisions of any estate tax law of the United States heretofore or hereafter enacted upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid, except in a case where a testator otherwise directs in his will, shall be equitably prorated *among the persons interested in the estate* to whom such property is or may be transferred, or to whom any benefit accrues. . . . For the purposes of this section, the term '*persons interested in the estate*' shall, with respect to both State and Federal taxes, include *all* persons who may be entitled to receive *or who have received* any property or interest which is required to be included in the gross estate of a decedent . . . whether under a will or intestacy, or by reason of any transfer, trust. . . ." (Italics supplied.)

For the sake of emphasis we have italicized the words which are important to its construction.

The guardian ad litem contends that this act should be limited in its application to the estates of decedents who died after its effective date (July 2, 1937) and calls our attention to the decisions holding that the presumption is against a retroactive construction of a statute. The

many cases on retroactive statutes are apt to cause confusion unless certain fundamental principles are kept in mind. Before applying the presumption we must first be sure that the statute to be interpreted is one that calls for the application of the presumption. Thus, a statute is not to be regarded as retroactive merely because part of the requisites for its action is drawn from a time antecedent to its passage: Endlich on Interpretation of Statutes, sec. 280. Or, as stated in Cox v. Hart, 260 U. S. 427, 435: "A statute is not made retroactive merely because it draws upon antecedent facts for its operation." Nor is it rendered so merely because the facts or requisites upon which its subsequent action depends, or some of them, are drawn from a time antecedent to the enactment: Reynolds v. United States, 292 U. S. 443, 448.

The distinguished counsel for the accountant correctly points out that on July 2, 1937 (the effective date of the act), the accounts in the trusts now under consideration had not yet been adjudicated by the court, although a hearing had been held. Therefore, the accountings were (still) pending. It also appears in each of the accounts that the trustee "has paid Federal and State taxes". Thus by fulfilling the requirements of the statute, these facts bring into operation the provision of section 48.1(a) of the Act of 1937, supra, that:

". . . the amount of the tax so paid, except in a case where a testator otherwise directs in his will, shall be equitably prorated among the persons interested in the estate to whom said property is or may be transferred, or to whom any benefit accrues".

Thus the literal language of the act applies. There is no need for calling upon rules relating to construction of retroactive statutes merely because certain events (the payment of the tax and the filing of the account) which call the act into operation preceded its passage. After all, the court is acting *subsequent* to the passage of the statute.

We agree with the learned counsel for the accountant and hold that, under the authorities quoted, the statute need not be regarded as retroactive in order for it to apply to the case before us, or to any case where the final decree of distribution has not yet been entered.

However, even if we consider the act, as applied to the instant case, as a retroactive statute, our conclusion would nevertheless be the same. Retroactive statutes are not invalid unless their substance conflicts with some constitutional provision such as that protecting the obligation of contract or the "due process" clause protecting vested rights, etc. Most of the cases in the books deal with retroactive legislation operating to interfere with such constitutional rights, and, of course, under such circumstances, such rights are protected either by declaring the act invalid or by construing the act prospectively so as to avoid the constitutional inhibition. In such cases, we naturally find the presumption against construing a statute retrospectively is most weighty so that such construction will not be given unless clearly and expressly demanded.

But where vested rights are not affected, the presumption is far less potent: Endlich on Interpretation of Statutes, sec. 284. Yet because such legislation is uncongenial to our institutions and hazardous to private rights, such presumption still persists unless the act be remedial: Dewart v. Purdy, 29 Pa. 113 (1858). If it be remedial, the presumption does not apply at all for a defaulter can have no vested right in a state of law which leaves the injured party without a remedy, or with only a defective remedy: The Turnpike Co. v. The Commonwealth, 2 Watts 433. In In re Short's Estate, 16 Pa. 63 (1851), Chief Justice Gibson pointed out that the argument that the court ought not to give a statute a retroactive effect unless forced to by the stringency of its words, while sound, where retroaction works an injustice, does not apply where no injustice would be done.

With these explanations of the rule in mind, let us first see if the statute, interpreted retroactively, would impair any vested rights. Superficially it might seem that, if a legatee's or devisee's title dates from the death of the decedent, his rights have become vested as of that date so as to be protected against any change thereafter. The rights of a legatee or devisee are, however, not absolutely vested at the date of the death. The extent to which it vests cannot be ascertained or fixed until the administration of the estate is completed and distribution ordered. There can be no absolute title in the heir or legatee until there has first been determined how much of the decedent's property, personal or real, is required to satisfy the administration expenses, the widow's exemption, the funeral expenses, the decedent's debts, and the inheritance taxes. Thus the vesting in the heir or devisee must be regarded as subject to matters of administration and distribution as to which the sovereign power may legislate until the estate has been closed by final decree of distribution.

Many cases illustrate the principle. Thus as far back as Carpenter v. Pennsylvania, 17 How. (58 U. S.) 456, where it was urged that the right of a legatee in Pennsylvania vested at the date of the death of the testator so that an amendment of the collateral inheritance tax, thereafter passed, could not constitutionally apply to such legatee, the Supreme Court of the United States said, page 462:

"It is, in some sense, true, that the rights of donees under a will are vested at the death of the testator; and that the acts of administration which follow are conservatory means, directed by the State to ascertain those rights, and to accomplish an effective translation of the dominion of the decedent to the objects of his bounty. . . . But, until the period for distribution arrives, the law of the decedent's domicile attaches to the property. . . . The rights of the donee are subordinate to the conditions, formalities, and administrative control, prescribed by the State in the interests of its public order, and are only ir-

revocably established upon its abdication of this control, at the period of distribution. If the State, during this period of administration and control by its tribunals and their appointees, think fit to impose a tax upon the property, there is no obstacle in the constitution and laws of the United States to prevent it."

This case was cited with approval and followed in Cahen v. Brewster, etc., 203 U. S. 543, 548, where the decedent died at a time when there was no inheritance tax in Louisiana. After his death such tax was imposed and by the act, made to apply on "all successions not finally closed and administered upon and on all successions hereafter opened." Yet, the statute was held constitutional.

In Jewell's Estate, 235 Pa. 119, 122, Mr. Justice von Moschzisker said:

"The question of the tax or the amount to be retained by the Commonwealth upon the transmission of decedents' estates is peculiarly for the law making power of the State; no authority has been cited to us, and we know of no rule or principle which forbids the Legislature to make changes in the statutory law affecting the time or manner of assessing an inherited estate, and incidentally to affect the sum of the tax to be paid, at any time before the estate comes into the actual possession of the person liable for the tax prior to an actual payment thereof."

See also In re Short's Estate, supra, and Aubert's Appeal, 109 Pa. 447. These authorities make it plain that there are no constitutional obstacles in the way of interpreting the Act of 1937, supra, so as to apply to any case where final distribution has not been decreed. All that that act does is to require that the burden of the estate taxes (State and Federal) be equally shared by all the beneficiaries of the decedent unless the decedent himself otherwise directs. This is clearly a matter of administration upon which the State may legislate until the estate be closed.

As before stated, in determining the proper construction of a retroactive statute, it is not enough to inquire

16

whether it conflicts with constitutional restrictions, there must be a further inquiry to ascertain if the language itself sufficiently indicates a legislative intent to have it retrospective. If it does, then such construction must be given it. If not, or there is doubt, then, but only then, must be applied the rule which is now incorporated in our new Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 56:

"No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature."

Turning to the statute under consideration, and examining especially the words which were italicized, we find a sufficiently clear intention that the act should apply in every case in which the estate has not been closed by a final decree of distribution. The statute is made effective immediately upon its final enactment: Dewart v. Purdy, supra. It nowhere contains any words indicating a prospective operation, such as e. g. "from and after the passage of this act", or, "from and after a designated date", or the word "hereafter", or like words which would import a future operation. On the contrary, the Act of 1937 begins with apt phraseology to indicate that it is to apply to pending matters. Witness the language:

"*Whenever* it appears upon any accounting or in any appropriate action or proceeding that an executor . . . trustee, or other person acting in a fiduciary capacity, *has paid* an estate tax", etc.

All of these things are necessary before the statute can operate, viz.; there must have been an accounting and the executor must have previously paid the tax. When to this is added the fact that the statute is highly remedial, visits no injustice but in fact makes for justice, we have no hesitation in holding that it was intended to apply to all matters pending in which no final decree of distribution had been made at the time the act became effective.

Finally, we consider a third view of this statute, which is, that the act may well be construed as one regulating

procedure only. President Judge Marx of the Orphans' Court of Berks County, in a learned opinion in the matter of the Estate of Joseph A. Stockler (not yet reported), so regards this statute and he justifies his holding as follows:

"This act constitutes an addition to the Fiduciaries Act of 1917. It neither enacts nor amends tax legislation. It imposes no tax but takes up taxes already imposed and settled, and paid by the fiduciary, directs allocation, and facilitates recovery from persons and estates liable thereunder. It is limited in application to 'estate taxes', Federal and State. In respect to trust estates, it directs payment of the tax out of the principal, without proration among the several estates into which the trust is broken. Taxes paid on assets not in the possession of the fiduciary may be recovered from the person in possession or from the beneficiary in the asset. The orphans' court 'may, by order, direct . . . payment . . . by such persons to the . . . fiduciary', and shall enter a decree 'summarily directing all other persons . . . who are in possession of property or interests of such persons' (against whom the tax has been prorated) 'to make payment . . . to such . . . fiduciary' ".

So construed, there could not be the slightest question of the application of this act to cases pending at the time of its enactment, because as to statutes concerning procedure the presumption is the reverse. See Unruh's Estate, 29 D. & C. 113, where Judge Sinkler, quoting from Kuca v. Lehigh Valley Coal Co., 268 Pa. 163, said:

" 'Legislation which affects rights will not be construed to be retroactive unless it is declared so in the act. But where it concerns merely the mode of procedure, it is applied, as of course to litigation existing at the time of its passage.' "

Thus, whether this Act of July 2, 1937, P. L. 2762, be viewed as operating prospectively or retroactively, or regarded as a statute conferring a substantive right to recover contribution which did not previously exist, or as a

statute concerning procedure only, for the reasons set forth, we now hold it applicable to every case pending in which a final decree of distribution was not entered at the effective date of the act.

The exceptions are dismissed and the adjudication is confirmed absolutely.